UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
3:22-cv-197

| | |
|---|---|
| **NEIL PREGOZEN, Executor of the Estate of David Pregozen, Deceased**, | : <br> : <br> : |
| Plaintiff, | : |
| vs. | : <br> : |
| **BRIGHTHOUSE LIFE INSURANCE COMPANY,** | : **CLASS ACTION COMPLAINT** <br> : **WITH JURY DEMAND** <br> : |
| Defendant. | : <br> : <br> : |

Plaintiff Neil Pregozen, Executor of the Estate of David Pregozen, by and through his attorneys, brings this action against Defendant Brighthouse Life Insurance Company ("Defendant" or "Brighthouse"). All allegations made in this Class Action Complaint are based upon information and belief except those allegations that pertain to Plaintiff, which are based on personal knowledge. Each allegation in this Class Action Complaint either has evidentiary support or, alternatively, pursuant to Rule 11(b)(3) of the Federal Rules of Civil Procedure, is likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

## INTRODUCTION

1. Plaintiff brings this action on behalf of the estate of his deceased father, David Pregozen, and on behalf of others similarly situated, alleging that Defendant routinely underpays long-term care insurance benefits owed due to a known "glitch" in Defendant's claims management software.

2. Defendant's long-term care policies provide different benefit types subject to different benefit caps. Two such benefits are Benefits for Nonconfined Care ("Nonconfined Care" benefits), which are subject to a daily maximum benefit amount (the "Daily Benefit Amount"),

and Benefits for Care Coordination ("Coordinated Care" benefits), which are subject to an annual maximum benefit amount (the "Annual Maximum Benefit Amount").

3. However, due to a "glitch" in Defendant's claim processing software, when Coordinated Care invoices are entered into Defendant's claims processing system before [1] Nonconfined Care invoices are entered for a given day, the system inappropriately applies the Coordinated Care invoices towards the Nonconfined Care benefit's Daily Benefit Amount. When that happens, the policyholder's Daily Benefit Amount is reached prematurely and claims for subsequently entered invoices for Nonconfined Care are wrongfully denied.

4. As a result of the "glitch," Defendant has underpaid thousands of dollars of benefits due under Plaintiff's father's policy alone.

5. Defendant has known of the "glitch" since at least December 2020, when one of Defendant's claims specialists identified it as the cause of certain underpayments of benefits owed under Plaintiff's father's long-term care policy. Yet Defendant has failed to fix the glitch, fully pay Plaintiff all monies owed due to the glitch, and Defendant willfully and knowingly continues to underpay long term care benefits owed.

6. Plaintiff brings this putative class action on behalf of all individuals who have had claims underpaid as a result of the software glitch and who continue to be subject to the software glitch. Plaintiff seeks damages and injunctive relief.

---

[1] If Nonconfined Care invoices for a given day are entered into Defendant's system prior to the Coordinated Care invoices, the system properly applies the Coordinated Care charges against the Annual Maximum Benefit Amount, not the Daily Benefit Amount.

## PARTIES

7. Plaintiff Neil Pregozen was appointed as Executor of the Estate of David Pregozen, Deceased, by the State of New Jersey, Bergen County Surrogate's Court on April 21, 2021. *See* Exhibit 1. David Pregozen was at all relevant times a citizen of New Jersey.

8. Defendant Brighthouse Life Insurance Company is an insurance company organized under the laws of Delaware, whose principal place of business is in Charlotte, North Carolina. It is authorized to do business in the State of North Carolina.

## JURISDICTION AND VENUE

9. This Court has original diversity jurisdiction of this matter pursuant to 28 U.S.C. § 1332(d)(2), as the amount in controversy exceeds $5,000,000 exclusive of interest and costs and is a class action in which members of the putative Class are citizens of a State different from the Defendant.

10. Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(a)(2) as a substantial part of the events, circumstances, and omissions giving rise to these claims occurred in this District.

## FACTUAL SUMMARY

### The Policy

11. David Pregozen was the owner of a long-term care insurance policy number LTC2902842 ("Policy") originally issued by The Travelers Insurance Company ("Travelers") on October 11, 1993. As reflected in three name change endorsements attached to the Policy, Travelers was subsequently acquired by MetLife Insurance Company of Connecticut, which later changed its name to MetLife Insurance Company USA, and, later still, to Brighthouse Life Insurance Company. A copy of the Policy is attached hereto as Exhibit 2.

12. Despite Defendant's imposition of *multiple* rounds of premium increases over the years, David Pregozen always fully and timely paid all premiums due on the Policy.

13. The Policy provides benefits for "Confined Care," "Nonconfined Care," "Respite Care," and (pursuant to an Enhancement Rider) "Care Coordination."

14. According to the Policy (as amended by the Enhancement Rider), "Nonconfined Care is care received at an Adult Day Care Center, Assisted Living Care Facility, Home Health Care, and Home Hospice Care…." Under Home Health Care, the Policy in relevant part provides "We will pay the Daily Benefit Amount for Nonconfined Care or 100% of the covered charges incurred, whichever is less, for each day the Insured receives Home Health Care Services in the Home." At all relevant times, the Policy's Daily Benefit Amount for Confined Care was $249.00 and the Policy's Daily Benefit Amount for Nonconfined Care was $124.50.

15. The Policy (as amended by the Enhancement Rider) states "We will pay benefits for Care Coordination and associated expenses" and defines Care Coordination as "services provided by a Health Care Professional or by a licensed case management agency that the Insured may select, which involves assessing the need for care, creating or implementing a plan of care, where applicable, and periodically reviewing the plan of care."

16. The Policy clarifies that "***Care Coordination benefits payable will not be subject to the … Daily Benefit Amount limits.***" (emphasis added).

17. Instead, the Policy limits Coordinated Care benefits to a "Annual Maximum Benefit Amount:" "The maximum amount payable for Care Coordination benefits in any Policy Year is 20

times the Daily Benefit Amount for Confined Care.[2] Care Coordination benefits may be payable more than once during a Policy Year, up to the annual maximum benefit amount."

## The Glitch

18. Several times during 2020, Plaintiff was reviewing Home Care and Coordinated Care benefit payments received from Defendant for his father, David, when he noticed discrepancies between the amount of benefits he calculated as being owed and the amount of benefits actually paid by Defendant.

19. Plaintiff contacted Defendant and worked with one of Defendant's claims specialists to investigate the discrepancies. The claims specialist admitted to Plaintiff that the underpayments were caused by what she called a "glitch" in Defendant's claim processing system that would erroneously apply Coordinated Care expenses towards the Policy's Daily Benefit Amount for Nonconfined Care whenever Coordinated Care expenses were entered into the system for a given day before Nonconfined Care expenses were entered for that given day.

20. When Nonconfined Care expenses were entered into the system for a given day before Coordinated Care expenses, the system would work properly and the Coordinated Care expenses would not be applied toward the Daily Benefit Amount. In other words, depending on the sequence in which Defendant's claims specialists enter expenses into Defendant's claims processing system, the amount of benefits paid to the insured would vary considerably.

21. Defendant's claims specialist apologized for the error and assured Plaintiff that the problem would be rectified.

---

[2]The Policy's Daily Benefit Amount for Confined Care was at all relevant times $249.00, so the Annual Maximum Benefit Amount for Coordinated Care was $4,980.00.

22. Following the above-described interaction between Plaintiff and Defendant's claim specialist, Defendant continued to underpay benefits owed to Plaintiff's father due to the "glitch." These underpayments exceeded $2,700. Plaintiff contacted Defendant numerous times to address the underpayments, but Defendant failed to timely respond.

23. Months later, following several additional attempts by Plaintiff to seek the benefits owed to his father, Defendant responded to Plaintiff's request for the full payment of benefits owed by flatly denying his request.

24. David Pregozen passed away on March 10, 2021.

25. On Nov. 4, 2021, Plaintiff's mother, Selma, passed away. When Plaintiff reviewed the final payment received from Defendant for Home Care and Coordinated Care benefits under Selma's long-term care insurance policy with Defendant, he noticed a $451.50 discrepancy between the benefits he calculated were owed and the benefits actually paid by Defendant. Selma's long-term care insurance policy (Policy No. LTC2902943) is substantially similar to David's Policy and Selma, like David, was receiving benefits for both Nonconfined Care and Coordinated Care.

26. Plaintiff called Defendant on or about Dec. 8, 2021 and spoke with another claims specialist in Defendant's claims processing department.

    a. During the call, Plaintiff explained his previous interactions with another claim specialist regarding the "glitch" and asked this second claim specialist if she remembered or knew about the "glitch" identified by the prior claim specialist the previous year.

    b. The current claim specialist responded, "Yes."

c. Plaintiff explained that according to his calculations, if the glitch were still in place it would account *to the penny* for the $451.50 difference between the amount of benefits Plaintiff calculated were owed and the amount Defendant actually paid.

d. The claim specialist reviewed the relevant expense and payment entries to determine whether the "glitch" caused Coordinated Care expenses to improperly void out subsequently entered Home Care expenses and concluded, "Yes sir, they did."

e. Plaintiff asked for clarification: "So the Care Coordination benefit ended up voiding out the Home Care benefit erroneously for those three days?"

f. The claim specialist responded, "Yes, sir."

g. Plaintiff explained that the glitch was in the system a year ago and told this claim specialist that he was "surprised that it had not been repaired by now."

h. The claim specialist responded that when she enters invoices into the system, she normally tries to ensure that Home Care expenses are entered first but that the transactions at issue were missed because the Coordinated Care expenses and Home Care expenses were submitted by Selma at different times and paid with different checks.

27. In other words, Defendant has no intention of actually fixing the software glitch and instead depends on claims specialists to work around the glitch by entering Home Care invoices first (which is not always possible if the receipts are submitted on different days) or manually override the glitch when insureds notice that they have been underpaid and complain.

## CLASS ACTION ALLEGATIONS

28. Plaintiff incorporates by reference all of the preceding allegations.

29. Upon information and belief, there are many forms or "series" of the Long-Term Care Policy at issue in this litigation that contain the materially similar benefits and limits. Upon information and belief, thousands of people purchased this Policy or similar policies, each of which contains identical contractual language relevant to this class action.

30. Upon information and belief, thousands of these Policies remain in force.

31. Upon information and belief, hundreds of Class Members throughout the United States have been and continue to be wrongfully denied benefits due to the "glitch" (e.g., because Coordinated Care expenses were entered into the system for a given day before Nonconfined Care expenses were entered for that given day).

32. Plaintiffs seek to represent the following proposed Class:

All individuals nationwide who have or had the Policy, or a similar policy, with Defendant and whose Coordinated Care expenses for a given day were entered into Defendant's system before Nonconfined Care expenses were entered for the same day.[3]

33. The Class Members are so numerous that joinder of all members is impracticable.

34. There are numerous questions of law or fact common to each Class Member as a whole including, but not limited to, the following:

   a. whether the relevant terms of the Class Members' Policies are substantially identical;

   b. whether Defendant entered into its claims processing software Coordinated Care expenses for a given day before it entered Nonconfined Care expenses;

---

[3] Plaintiff reserves the right to amend the class definition as this litigation proceeds.

c. whether as a result of the sequence in which expenses were entered into Defendant's claims processing software, Defendant's claims processing system erroneously applied Coordinated Care expenses towards the Policy's Daily Benefit Amount;

d. whether Defendant breached the terms of the Policy by using claims processing software that applied Coordinated Care expenses towards the Policy's Daily Benefit Amount;

e. whether Defendant's intentional and continued use of claims processing software known to contain the "glitch" caused Defendant to arbitrarily and capriciously deny coverage as described above in subparagraph (d) in bad faith.

35. The claims of Plaintiff are typical of the claims of the Class.

36. Plaintiff will fairly and adequately protect the interest of the Class and has engaged counsel experienced in litigating class actions and experienced in litigating long term care coverage class actions.

37. The prosecution of separate actions by or against individual members of the Class will create a risk of inconsistent or varying adjudications with respect to the individual members of the Class, which could establish incompatible standards of conduct for Defendant.

38. Defendant has acted and is refusing to act on grounds generally applicable to the Class as a whole, thereby making final injunctive and declaratory relief with respect to the Class as a whole appropriate.

39. Questions of law and fact common to the members of the Class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

40. To that end, (1) upon information and belief, individual Class Members' interest in controlling and litigating separate actions would be low for a number of reasons including the difficulty of retaining and paying counsel to litigate their claims; (2) the extent and nature of any litigation previously commenced concerning this controversy has been rare and is likely to only involve a few policy holders; (3) it is highly desirable to concentrate this litigation in this particular forum so as to ensure that every member of this highly vulnerable, frail, ill, and aged population receives the policy benefits for which they paid and to which they are entitled; and (4) there likely would be little, if any, difficulties encountered in the management of this case as a class action.

## COUNT I

## BREACH OF CONTRACT

**(On behalf of the Class)**

41. Plaintiff incorporates by reference all previous paragraphs as if restated herein.

42. David Pregozen purchased the Policy from Defendant and at all relevant times paid all necessary premiums.

43. David Pregozen submitted claims for Coordinated Care and Nonconfined Care benefits.

44. Defendant wrongfully underpaid benefits owed under the Policy because the Policy's Daily Benefit Amount was reached prematurely as a result of the "glitch" described herein.

45. Defendant's underpayment of benefits owed breached the terms of the Policy, for which Plaintiff and similarly situated Class Members are entitled to relief.

## COUNT II

## BAD FAITH

43. Plaintiff incorporates all previous paragraphs as if restated herein.

44. Defendant systematically, willfully and knowingly, and without a fair evaluation, underpays benefits owed (and continues to underpay benefits owed) under the Policy due to a known glitch in its claims management system. This violates in bad faith Defendant's duty to fairly evaluate and thoroughly review claims for benefits submitted by Plaintiff and similarly situated Class Members. As such, Plaintiff and the Class Members are entitled to appropriate relief including punitive damages.

45. Defendant's blind adherence to claims processing software even though it knows it contains a "glitch" that causes Defendant to underpay claims is unreasonable, unfounded, and frivolous, and hence constitutes bad faith, entitling Plaintiff and the Class to punitive damages.

46. Defendant knows that the "glitch" can cause, and does cause, policyholders to reach their Daily Benefit Amount prematurely, yet Defendant continues to use its claims management software. Defendant's underpayment of claims are predicated upon circumstances that have no reasonable justification, and are therefore made in bad faith.

47. Because Defendant put its financial interest above those of its policyholders, Plaintiff and Class Members are entitled to all appropriate relief, including punitive damages.

## Prayer for Relief

WHEREFORE, Plaintiff individually and on behalf of the putative Class demand judgment against Defendant for a sum in excess of $5,000,000 for Policy benefits owed for Defendant's breach of contract and/or bad faith, compensatory, consequential, disgorgement and punitive

damages, interest, attorney fees, costs, and any other relief to which Plaintiff may be entitled, including but not limited to, an injunction and an accounting.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury for all issues so triable.

Respectfully submitted, this the 4th day of May, 2022.

/s/*Norris A. Adams, II*
Norris A. Adams, II
N.C. Bar No. 32552
ESSEX RICHARDS, P.A.
1701 South Boulevard
Charlotte, NC 28203
Telephone: (704) 377-4300
Facsimile: (704) 372-1357
nadams@essexrichards.com

Sean K. Collins (pro hac vice to be filed)
Law Offices of Sean K. Collins
184 High Street, Suite 503
Boston, Massachusetts 02110
Phone: (855) 693-9256
Fax: (617) 227-2843
sean@neinsurancelaw.com

Jeffrey S. Goldenberg (pro hac vice to be filed)
Goldenberg Schneider, LPA
4445 Lake Forest Drive, Suite 490
Cincinnati, Ohio 45249
Phone: (513) 345-8291
Fax: (513) 345-8294
jgoldenberg@gs-legal.com
tnaylor@gs-legal.com